## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KARNA REED,** | ) | |
| **o/b/o J.S.R., a minor** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 12-CV-189-PJC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

### ORDER AND OPINION

Karna Reed ("Reed") on behalf of her minor son, J.S.R. ("Claimant"), requests judicial

review of the decision of the Commissioner of the Social Security Administration

("Commissioner") denying Claimant's application for disability benefits under the Social

Security Act, 42 U.S.C. §§ 401 *et seq*.  In accordance with 28 U.S.C. § 636(c)(1) and (3), the

parties have consented to proceed before a United States Magistrate Judge.  Any appeal of this

order will be directly to the Tenth Circuit Court of Appeals.  Claimant appeals the decision of the

Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ

incorrectly determined that Claimant was not disabled.  For the reasons discussed below, the

Court **AFFIRMS** the Commissioner's decision.

---

[1]     Pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, the current Acting Commissioner of the Social Security Administration, is substituted for Michael J. Astrue as Defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**Claimant's Background**

Claimant was 2-and-a-half years old at the time of the hearing before the ALJ on July 20, 2010. (R. 41). Reed testified that she filed for disability because Claimant had already received four surgeries and was expected to have two additional surgeries. (R. 43). Claimant had been born with a cleft lip and cleft palate. *Id.* He lacked facial structure and had repeated ear infections. (R. 44). He had suffered some hearing loss from the infections. *Id.*

Reed testified that she had located a cleft palate team at the University of Tulsa who recommended that she pursue surgery for Claimant in Dallas. (R. 45). The team Claimant saw in Dallas included a plastic surgeon, an orthodontist, a dentist, a nurse practitioner, a social worker, and an ear, nose, and throat ("ENT") specialist. (R. 46). Team members worked in conjunction with each other. *Id.*

Reed testified that she observed problems that Claimant had with his speech, his hearing, his inability to eat some foods, and his sense of balance. (R. 49). She said that larger chunks of food, such as a blueberry, could get stuck in his palate, and she would have to remove the food with tweezers. (R. 52-53). Reed testified that this happened several times a week. *Id.* Claimant also choked on food at times. (R. 53). Compared to her other child, Reed said that Claimant had more illnesses such as colds. *Id.* Reed testified that Claimant had an albuterol nebulizer. (R. 54).

Claimant was seen at Shasta Community Health Center (the "Shasta Clinic") on February 6, 2008, at two months of age for a routine well child visit with Joe Villalobos, M.D. (R. 207). The doctor noted that all areas of development were appropriate for Claimant's age. *Id.* Claimant returned on February 21, 2008 after an emergency room visit during which he was

found to be positive for RSV.[2]  (R. 204).  He was prescribed a nebulizer.  *Id.*  At a visit on March 3, 2008, Dr. Villalobos noted a new right inguinal hernia in addition to Claimant's cleft palate and lip.  (R. 203).  Dr. Villalobos saw Claimant frequently from February to July 2008.  (R. 196-211, 227-33).

Claimant was evaluated at the Craniofacial Center at Children's Hospital Oakland (the "Oakland Hospital") on February 26, 2008 at two months of age.  (R. 212-16).  The evaluation gave a timeline for behavioral audiology; ENT consultation; speech pathology; pediatric dental care; orthodontics and oral and maxillofacial surgery; and plastic and reconstructive surgery.  (R. 214).  On May 7, 2008, Claimant received surgery described as the repair of right cleft lip and first stage reconstruction of cleft lip nasal deformity.  (R. 217).  It was noted that the cleft was very wide.  *Id.*

A Childhood Disability Evaluation form was signed by agency nonexamining consultants George A. Jansen, M.D. on June 20, 2008 and C. David M.D. on July 1, 2008.  (R. 222-26).  The form indicated that Claimant's cleft palate was a severe impairment, but did not meet, medically equal, or functionally equal a listing.  (R. 222).  The physicians found no limitation in the first five domains of acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; and caring for yourself.  (R. 224). They indicated a marked limitation in the domain of health and physical well-being.  *Id.*  A second form was completed by agency nonexamining consultant George N. Lockie, M.D. on September 24, 2008 reflecting the same opinions.  (R. 242-47).

---

[2]     Respiratory syncytial virus, which is "a major cause of acute respiratory disease in children." Taber's Cyclopedic Medical Dictionary 1704 (17th ed. 1993).

Claimant had surgery at the Oakland Hospital on August 25, 2008 for laparoscopic repair of a right inguinal hernia.  (R. 235-36).

Claimant was in-patient at the Oakland Hospital October 1-4, 2008 for cleft palate and cleft lip repair.  (R. 264-322).  He remained in the hospital after the surgery for "management of pain and observation of his airway afterwards."  (R. 264).  When discharged, Claimant "was tolerating oral feeds, without significant pain issues, with a stable airway."  *Id.*  Claimant saw the surgeon, Dr. Cedars, for follow up on October 16, 2008.  (R. 262).  Dr. Cedars said that the palate was healing uneventfully.  *Id.*

Dr. Villalobos continued to see Claimant for routine and acute treatment from September 2008 through June 2009.  (R. 323-44).

Claimant was given a speech and oral mechanism evaluation on December 3, 2008 by Speech-Language Pathologist Christina T. Roth.  (R. 255-56).  Claimant passed "100% of the items for auditory comprehension and language expression at the 9-12 month level."  (R. 255).

On December 31, 2008, Dr. Villalobos noted that Claimant was doing very well after his surgeries.  (R. 337).  At a routine visit on March 30, 2009, Dr. Villalobos again stated that Claimant had been doing well.  (R. 330).  On June 30, 2009, he noted that Claimant had been treated the previous month for an ear infection.  (R. 323).  He said that Claimant's speech was "coming along well."  *Id.*  Claimant was still using a nebulizer as needed.  *Id.*

Claimant was evaluated by the University of Tulsa Cleft Palate Team on November 12, 2009.  (R. 345-48).  The evaluators found that Claimant's consonant and vowels sounds were slightly delayed for his age.  (R. 346).  It was recommended that the family enroll Claimant in speech therapy.  *Id.*  Claimant was found to have mild to moderate hearing loss and flat

tympanograms in both ears.  *Id.*  Claimant was referred to an ENT specialist.  *Id.*  It was noted

that Claimant's pediatric dentist had recommended removal of a decayed tooth.  *Id.*

Claimant was seen as a new patient at Pediatric Dental Group on December 10, 2009.  (R.

349).  Treatment notes from January to April 2010 state that the dentists wanted to widen

Claimant's upper palate in preparation for a bone graft when Claimant was older.  *Id.*

Claimant was seen at Children's Medical Center in Dallas, Texas on June 4, 2010.  (R.

355-61).  Richard Y. Ha, M.D. recommended bone graft surgery between ages 7 and 9, and he

said that he would see Claimant annually.   (R. 360).  A speech pathologist said that Claimant

had age appropriate language and "articulation errors characterized by glotall stops/k,p."  *Id.*

### Procedural History

On May 16, 2008, Reed filed for supplemental security income benefits under Title XVI,

42 U.S.C. § 1381 *et seq.*, on behalf of Claimant.  (R. 142-44).  Claimant's application for

benefits was denied in its entirety initially and on reconsideration.  (R. 71-79).  A hearing before

ALJ John Volz was held July 20, 2010, in Tulsa, Oklahoma.  (R. 39-68.  By decision dated

August 5, 2010, the ALJ found that Claimant was not disabled at any time since the date the

application was filed.  (R. 12-24).  On February 21, 2012, the Appeals Council denied review of

the ALJ's findings.  (R. 1-6).  Thus, the decision of the ALJ represents the Commissioner's final

decision for purposes of further appeal.  20 C.F.R. § 416.1481.

### Social Security Law and Standard of Review

A child under eighteen years of age is "disabled" for the purposes of determining benefits

if he has "a medically determinable physical or mental impairment, which results in marked and

severe functional limitations, and which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

1382c(a)(3)(C)(I).  A three-step sequential process guides the Commissioner's determination of whether a child meets the disability criteria.  20 C.F.R. § 416.924(a).  The ALJ must determine (1) whether the child is engaged in "substantial gainful activity"; (2) whether the child's impairment or combination of impairments is severe; and, (3) if severe, whether the child's impairment "meets, medically equals, or functionally equals the listings" set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. § 416.924(a).

The third step requires an initial determination of whether the impairment meets the requirements of a listing by satisfying "all of the criteria of that listing, including any relevant criteria in the introduction."[3]  20 C.F.R. § 416.925(c)(3).  Next, if the child's impairment fails to meet the criteria, there must be a determination of whether it "medically equal[s] the criteria of a listing."  20 C.F.R. § 416.925(c)(5).  An impairment is the medical equivalent of a listing "if it is at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 416.926(a).  Medical equivalence can be found where the child has an impairment included in the listings, but "do[es] not exhibit one or more of the findings specified" for the particular listing examined, or "one or more of the findings is not as severe as specified," yet there are "other findings related to [the] impairment that are at least of equal medical significance to the required criteria."  20 C.F.R. § 416.926(b)(1)(i)-(ii).  Last, if the impairment neither meets nor medically equals any listing, there must be a determination of "whether it results in limitations that functionally equal the listings."  20 C.F.R. § 416.926a(a).

---

[3]      An impairment cannot meet one of the listings merely on the basis of a diagnosis, there must be "a medically determinable impairment(s) that satisfies all of the criteria."  20 C.F.R. § 416.925(d).

For an impairment to be the functional equivalent of a listing, it must be of listing-level severity because it results in either marked[4] limitations in two domains of functioning or an extreme[5] limitation in one domain.  20 C.F.R. § 416.926a(a).  In assessing functional limitations, the ALJ considers all relevant factors outlined in 20 C.F.R. §§ 416.924a, 416.924b, and 416.929, including (1) how well the child initiates and sustains activities, whether he needs extra help, "and the effects of structured or supportive settings"; (2) how the child functions in school; and (3) how the child is affected by medications or  treatments.  20 C.F.R. § 416.926a(a)(1)-(3).  The ALJ examines whether the child functions "appropriately, effectively, and independently" in six domains, *i.e.*, "broad areas of functioning intended to capture all of what a child can or cannot do," compared with the abilities of other unimpaired children the same age.  20 C.F.R. § 416.926a(b)(1).  The six domains are "(i) Acquiring and using information; (ii) Attending and

---

[4]     There is a "marked" limitation in a domain where the impairment(s) interferes seriously with the child's "ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  "It is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  *Id.*  The regulations further state:

> If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(2)(iii).

[5]     There is an "extreme" limitation in a domain where the "impairment(s) interferes *very* seriously with your ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i)(emphasis added).  "Extreme" refers to the worst limitations, but "does not necessarily mean a total lack or loss of ability to function."  *Id.*  "Extreme" represents the equivalent of functioning shown by a valid score at least "three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score."  20 C.F.R. § 416.926a(e)(3)(iii).

completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

## Decision of the Administrative Law Judge

The ALJ found that Claimant was a newborn / young infant at the time of the application and was an older infant at the time of the ALJ's decision. (R. 15). At Step One, the ALJ found that Claimant had not engaged in substantial gainful activity. *Id.* At Step Two, the ALJ found that Claimant's cleft lip and palate were severe impairments. *Id.* At Step Three, the ALJ found that Claimant's severe impairments did not meet a listing or medically equal the criteria of any listing. *Id.*

The ALJ then evaluated the six domains set forth in 20 C.F.R. § 416.926a(b)(1)(i)-(vi) to analyze whether Claimant's severe impairments were functionally equivalent to a listing. He

found that Claimant had no limitation in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for himself.  (R. 18-23).  The ALJ found that Claimant had a marked limitation in the domain of health and physical well being.  (R. 23-24).  Because he determined that Claimant had neither an "extreme" limitation in one domain of functioning nor a "marked" limitation in two domains, the ALJ found that Claimant was not disabled since the May 16, 2008 filing date.  (R. 24).

## Review

Claimant asserts that the ALJ failed to make a proper credibility assessment and that he failed to properly evaluate the functional equivalent of meeting a listing.  The Court finds that substantial evidence supports the ALJ's decision and it complies with legal requirements. Therefore the Court **AFFIRMS** the ALJ's decision.

### The ALJ's Credibility Assessment

Credibility determinations by the trier of fact are given great deference.  *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1499 (10th Cir. 1992).

> The ALJ enjoys an institutional advantage in making [credibility determinations].
> Not only does an ALJ see far more social security cases than do appellate judges,
> [the ALJ] is uniquely able to observe the demeanor and gauge the physical
> abilities of the claimant in a direct and unmediated fashion.

*White v. Barnhart,* 287 F.3d 903, 910 (10th Cir. 2002).  In evaluating credibility, an ALJ must give specific reasons that are closely linked to substantial evidence.  *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); Social Security Ruling 96-7p, 1996 WL 374186.  "[C]ommon sense, not technical perfection, is [the] guide" of a reviewing court.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).  In the case of a child claimant, "the ALJ must make

specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying." *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001).

Here, the ALJ described Reed's testimony in some detail in his decision. (R. 17-18). He rejected her testimony because the medical evidence did not indicate a severity of problems greater than his finding of a marked limitation in the domain of health and physical well-being. (R. 18). He also found it significant that Reed could not give details regarding any future expenses that would be incurred due to Claimant's severe impairment of a cleft palate. *Id.*

As the Tenth Circuit stated in *Keyes-Zachary*, common sense is the guide for the Court's review of the ALJ's credibility assessment. Here it is evident that Reed's testimony, even if found fully credible, did not support limitations other than the marked limitation found by the ALJ. The fact that Claimant has previously had surgeries and will have surgeries in the future does not, in itself, implicate any domains other than the domain of health and physical well-being, and the ALJ found a marked limitation in that domain. The same is true of Reed's testimony that Claimant had some difficulty eating and had some additional illnesses, such as colds, compared to other children. Her testimony regarding Claimant's speech, hearing, and sense of balance did not indicate problems of a severity that would reflect a limitation in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, or caring for yourself.

Thus, the undersigned finds that the ALJ's credibility assessment, while not as detailed or articulate as would have been preferable, is sufficient to express his view that Reed's testimony simply did not establish the severity of Claimant's limitations beyond the one marked limitation that he found. *See Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1302-03 (10th Cir. 2011) (allegations of severity were undercut by testimony of parent and child reflecting "very little

limitation"); *Porter v. Colvin*, 2013 WL 2150960 *3 (10th Cir.) (unpublished) (affirming ALJ's finding regarding mother's credibility). The undersigned is mindful that the Court cannot supply reasons to support the ALJ's credibility assessment that were not given by the ALJ himself. Judicial review of an agency decision is limited to the analysis offered in the ALJ's decision, and it is improper for a reviewing court to offer a "post-hoc rationale" in order to affirm. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008). Here, the Court's intention is not to make a finding based on a new rationale not provided by the ALJ; instead, the Court finds that a common sense interpretation of the ALJ's credibility assessment leads to the conclusion that the ALJ found that Reed's testimony did not establish severity of Claimant's limitations beyond those found by the ALJ in his RFC.

Reed also makes an argument related to a Function Report that she completed, describing this form as indicating that Claimant "by age one was not performing [specific activities]." Plaintiff's Opening Brief, Dkt. #15, p. 2. The undersigned disagrees with Reed's description of this form. The form states that it is to be completed for a child from birth to 1ˢᵗ birthday, and no date was filled in on the form. (R. 149-53). It appears that Claimant may have been less than six months old at the time the form was completed, and therefore a failure to point to things or to roll over would not have been indicative of delayed development. In any case, at the time of the hearing, Claimant was over two years of age, and there was much more recent information from medical sources indicating that Claimant was developing normally. The ALJ was under no obligation to inquire at the hearing regarding this specific Function Report or to discuss it in his decision. *See Korum v. Astrue*, 352 Fed. Appx. 250, 253-54 (10th Cir. 2009) (unpublished) (ALJ's opinion was thorough, and evidence not mentioned by the ALJ was not of such quality as to require discussion); *Shiplett v. Astrue*, 456 Fed. Appx. 730, 733-34 (10th Cir. 2012)

(unpublished) (several statements made by treating physicians in their records did not "qualify as 'significantly probative' evidence rejected by the ALJ," and therefore the ALJ was not required to discuss them).

The Court notes that many of Reed's arguments regarding credibility were single-sentence scattered assertions.  Plaintiff's Opening Brief, Dkt. #15, pp. 2-3.  The Tenth Circuit recently affirmed that arguments raised in a perfunctory manner are waived.  *See Tietjen v. Colvin*, 2013 WL 2436638 *3 (10th Cir.) (unpublished).  The undersigned finds that Reed's remaining arguments regarding the ALJ's credibility assessment consist of "unspecific, undeveloped, and unsupported single sentence[s]" and are waived.  *Id.*

**The ALJ's Consideration of the Six Domains**

Reed's first argument regarding the six domains is that the ALJ should have found an "extreme" limitation in the domain of health and physical well-being.  This is essentially a request for this Court to make a factual determination that is not within its jurisdiction.  The undersigned finds that the Court cannot make that determination without impermissibly substituting its judgment for that of the ALJ.  *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (court is not in a position to draw factual conclusions on behalf of the ALJ) (further quotations omitted).  There is substantial evidence supporting the ALJ's finding that Claimant's limitation in the domain of health and physical well-being was marked.

The undersigned views almost all of the treating and evaluating evidence as supporting a marked limitation in this domain, rather than an extreme limitation.  For example, Dr. Villalobos noted that all areas of development were appropriate at two months of age, he said in December 2008 that Claimant was doing well after his surgeries, on March 30, 2009, he said that Claimant was doing well, and on June 30, 2009, he noted that Claimant's speech was "coming along well."

(R. 207, 323, 330, 337).  In addition to Dr. Villalobos' treating records, the Childhood Disability

Evaluation forms signed by Dr. Jansen, Dr. David, and Dr. Lockie are substantial evidence

supporting the ALJ's finding of a "marked" limitation.

"Given the presence of substantial evidence to support the ALJ's determination, we will

not reverse, even though we might have made a different finding were we the factfinders."

*Miller ex rel. Thompson v. Barnhart*, 205 Fed. Appx. 677, 681 (10th Cir. 2006) (unpublished).

In *Miller ex rel. Thompson*, the mother argued that there was proof that her daughter had a

marked limitation in the domain of acquired information.  The ALJ had found a less than marked

limitation, and the Tenth Circuit affirmed.  As was true for the Tenth Circuit in *Miller ex rel.*

*Thompson*, the undersigned here finds that the ALJ's finding is supported by substantial

evidence, and it will therefore be affirmed.

Reed's second argument is that Claimant had marked limitations in the domains of

acquiring and using information and caring for yourself.  Plaintiff's Opening Brief, Dkt. #15, pp.

4-5.  For the argument related to the domain of acquiring and using information, Reed cites to the

report of the University of Tulsa Cleft Palate Team, stating that Claimant had a vocabulary that

was less than expected from a child his age.  *Id.*  The report, however, characterized this as a

"slightly delayed for what is expected from a child of his age."  (R. 346).  This evidence certainly

does not overcome all of the other evidence that supports the ALJ's finding of no limitation.

*Miller ex rel. Thompson*, 205 Fed. Appx. at 681.  For example, in December 2008, a speech

pathologist said that Claimant passed "100% of the items for auditory comprehension and

language expression at the 9-12 month level."  (R. 255).  Another speech pathologist in June

2010 found that Claimant had age appropriate language.  (R. 360).  The treating evidence of Dr.

Villalobos, cited above, and the Childhood Disability Evaluation forms signed by Dr. Jansen,

Dr. David, and Dr. Lockie are also substantial evidence supporting the ALJ's finding of a "marked" limitation.

Similarly, Reed argues that Claimant's inability to completely chew and swallow food is a "disturbance in eating" patterns in the domain of caring for yourself, citing 20 C.F.R. § 416.926a(k)(3)(vi).  Again, even if Claimant's difficulties in chewing and swallowing qualify as a disturbance in eating pursuant to this regulation, that does not mean that Claimant's limitation is necessarily at the marked level.  Again, this evidence does not overcome the substantial evidence that supports the ALJ's finding that Claimant had no limitation in the domain of caring for yourself.  *Miller ex rel. Thompson*, 205 Fed. Appx. at 681.  Dr. Villalobos' treating evidence and the Childhood Disability Evaluation forms again are substantial evidence supporting the ALJ's finding.

## Conclusion

Based upon the foregoing, the Court **AFFIRMS** the decision of the Commissioner denying disability benefits to Claimant for further proceedings consistent with this Order.

Dated this 26th day of June 2013.

Paul J. Cleary
United States Magistrate Judge